IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-1

 No. 213A20

 Filed 5 February 2021

 IN THE MATTER OF: C.L.H.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 22

 January 2020 by Judge Christy E. Wilhelm in District Court, Cabarrus County. This

 matter was calendared for argument in the Supreme Court on 6 January 2021 but

 determined on the record and brief without oral argument pursuant to Rule 30(f) of

 the North Carolina Rules of Appellate Procedure.

 No brief for petitioner-appellee mother.

 No brief for appellee Guardian ad Litem.

 Anné C. Wright for respondent-appellant father.

 EARLS, Justice.

¶1 Respondent appeals from the trial court’s order terminating his parental rights

 to C.L.H. (Cash).1 After careful review, we conclude that this case is in large part

 controlled by In re K.N., 373 N.C. 274, 837 S.E.2d 861 (2020), necessitating that we

 reverse in part and vacate and remand in part.

¶2 Respondent is the biological father of Cash, and petitioner is Cash’s biological

 1 A pseudonym is used in this opinion to protect the juvenile’s identity and for ease of

 reading. See N.C. R. App. P. 42(b)(1).
 IN RE C.L.H.

 2021-NCSC-1

 Opinion of the Court

 mother. Cash was born in 2009 following a brief relationship between respondent and

 petitioner. Respondent and petitioner never married. On 19 August 2011, respondent

 and petitioner entered into a parenting agreement by which petitioner was granted

 primary custody of Cash, and respondent was granted visitation. Respondent and

 petitioner also entered into a child support consent order by which respondent agreed

 to pay petitioner $433 per month and fifty percent of any uninsured medical bills

 after the first $250 was paid by petitioner. However, neither the facts alleged in the

 termination petition and admitted in the answer nor the trial court’s factual findings

 indicate whether the child support consent order was in effect during the year

 preceding the filing of the termination petition. The last known contact between

 respondent and Cash was in April 2018.

¶3 On 1 May 2018, the trial court held a hearing after petitioner filed a motion in

 the cause for modification of custody and to hold respondent in contempt. Petitioner

 stated that she filed the motion because of concerns she had regarding events that

 occurred during Cash’s visitation with respondent. Specifically, petitioner testified

 that Cash was visiting respondent on 25 February 2018 when she received a phone

 call claiming that she needed to pick up Cash because respondent had a medical issue.

 At the time, respondent was living in a camper behind his parents’ home, and Cash

 would stay in the grandparents’ home while visiting with respondent. When

 petitioner arrived at the grandparents’ home, she found that respondent had been
 IN RE C.L.H.

 2021-NCSC-1

 Opinion of the Court

 taken to the hospital. Petitioner testified that she went into respondent’s camper to

 retrieve Cash’s belongings and that it was “smoky” and smelled “chemically.” On 13

 June 2018, the trial court entered an order in which it found as fact that Cash found

 respondent unresponsive and sought help because respondent was “overdosing on

 heroin.” The trial court found respondent to be unfit to provide for Cash’s physical,

 emotional, and financial well-being and granted petitioner sole physical and legal

 custody of Cash. The trial court also terminated respondent’s visitation with Cash.

¶4 On 30 January 2019, petitioner filed a petition to terminate respondent’s

 parental rights to Cash. Petitioner alleged that grounds existed to terminate

 respondent’s parental rights for neglect, willful failure to pay child support,

 dependency, and willful abandonment. N.C.G.S. § 7B-1111(a)(1), (4), (6)–(7) (2019).

 On 10 April 2019, respondent filed an answer in which he opposed the termination of

 his parental rights. On 22 January 2020, the trial court entered an order in which it

 determined grounds existed to terminate respondent’s parental rights pursuant to

 N.C.G.S. § 7B-1111(a)(1), (4), and (6). The trial court further determined that it was

 in Cash’s best interests that respondent’s parental rights be terminated. Respondent

 appeals.

¶5 Respondent argues that the trial court erred by concluding that grounds

 existed to terminate his parental rights. “Our Juvenile Code provides for a two-step

 process for termination of parental rights proceedings consisting of an adjudicatory
 IN RE C.L.H.

 2021-NCSC-1

 Opinion of the Court

 stage and a dispositional stage.” In re Z.A.M., 374 N.C. 88, 94, 839 S.E.2d 792, 796–

 97 (2020) (citing N.C.G.S. §§ 7B-1109, -1110 (2019)). “At the adjudicatory stage, the

 petitioner bears the burden of proving by ‘clear, cogent, and convincing evidence’ the

 existence of one or more grounds for termination under section 7B-1111(a) of the

 General Statutes.” In re A.U.D., 373 N.C. 3, 5–6, 832 S.E.2d 698, 700 (2019) (quoting

 N.C.G.S. § 7B-1109(f) (2019)). We review a trial court’s adjudication of grounds to

 terminate parental rights “to determine whether the findings are supported by clear,

 cogent and convincing evidence and the findings support the conclusions of law.” In

 re E.H.P., 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019) (quoting In re Montgomery, 311

 N.C. 101, 111, 316 S.E.2d 246, 253 (1984)). “The trial court’s conclusions of law are

 reviewable de novo on appeal.” In re C.B.C., 373 N.C. 16, 19, 832 S.E.2d 692, 695

 (2019).

¶6 In this case, the trial court determined that grounds existed to terminate

 respondent’s parental rights based on neglect, willful failure to pay child support, and

 dependency. N.C.G.S. § 7B-1111(a)(1), (4), and (6). We begin our analysis with

 consideration of whether grounds existed to terminate respondent’s parental rights

 for neglect, pursuant to N.C.G.S. § 7B-1111(a)(1).

¶7 A trial court may terminate parental rights where it concludes the parent has

 neglected the juvenile within the meaning of N.C.G.S. § 7B-101. N.C.G.S. § 7B-

 1111(a)(1). A neglected juvenile is defined, in pertinent part, as a juvenile “whose
 IN RE C.L.H.

 2021-NCSC-1

 Opinion of the Court

 parent, guardian, custodian, or caretaker does not provide proper care, supervision,

 or discipline; . . . or who lives in an environment injurious to the juvenile’s welfare.”

 N.C.G.S. § 7B-101(15) (2019).

 Termination of parental rights based upon this statutory
 ground requires a showing of neglect at the time of the
 termination hearing or, if the child has been separated
 from the parent for a long period of time, there must be a
 showing of past neglect and a likelihood of future neglect
 by the parent.

 In re D.L.W., 368 N.C. 835, 843, 788 S.E.2d 162, 167 (2016) (citing In re Ballard, 311

 N.C. 708, 713–15, 319 S.E.2d 227, 231–32 (1984)). “When determining whether such

 future neglect is likely, the district court must consider evidence of changed

 circumstances occurring between the period of past neglect and the time of the

 termination hearing.” In re Z.V.A., 373 N.C. 207, 212, 835 S.E.2d 425, 430 (2019)

 (citing In re Ballard, 311 N.C. at 715, 319 S.E.2d at 232)).2

¶8 Here, Cash was not in respondent’s custody at the time of the termination

 hearing and had not been since at least 13 June 2018, when the trial court awarded

 petitioner sole physical and legal custody of Cash. The last known contact between

 respondent and Cash was in April 2018, approximately 18 months before the

 2 As we have noted in our recent opinion in In re R.L.D., No. 122A20, slip op. at 5 n.3

 (N.C. Dec. 11, 2020), it is not necessary in every case that a petitioner make a showing of past
 neglect and of a probability of future neglect to support a determination that a parent’s
 parental rights in a juvenile are subject to termination on the basis of neglect pursuant to
 N.C.G.S. § 7B-1111(a)(1). Such a determination is also permissible in the event that there is
 a showing of current neglect as defined in N.C.G.S. § 7B-101(15).
 IN RE C.L.H.

 2021-NCSC-1

 Opinion of the Court

 termination hearing. Additionally, because this case does not arise from involvement

 by the Department of Social Services, no petition alleging neglect was ever filed, and

 Cash was never adjudicated to be a neglected juvenile.

¶9 The sole finding of fact potentially supporting a conclusion that respondent had

 previously neglected Cash was finding of fact 17(a). In finding of fact 17(a), the trial

 court found that

 [r]espondent was unable to care for [Cash] during the
 February 2018 incident, whether it was due to a drug
 overdose or some other medical condition, for some period
 of time the child was not cared for and there does not
 appear that there was a proper plan in place for alternative
 care.

 Respondent argues that the portion of finding of fact 17(a) which states that Cash

 was not cared for during the February 2018 incident is not supported by clear, cogent,

 and convincing evidence. We agree. The only evidence in the record concerning Cash’s

 care during this incident was that he stayed in his grandparents’ home when visiting

 with respondent, that his paternal grandfather was the person who called for help

 with respondent’s medical issue, and that petitioner was called to pick up Cash from

 the grandparents’ home. There was no evidence presented that Cash was not cared

 for during this incident. Accordingly, we disregard this portion of finding of fact 17(a).

 See In re J.M.J.-J., 374 N.C. 553, 559, 843 S.E.2d 94, 101 (2020) (disregarding

 adjudicatory findings of fact not supported by clear, cogent, and convincing evidence).

¶ 10 We further note that the trial court’s findings of fact, even if supported, shed
 IN RE C.L.H.

 2021-NCSC-1

 Opinion of the Court

 little light on how this incident, and the alleged absence of care, impacted Cash. See

 In re K.L.T., 374 N.C. 826, 831, 845 S.E.2d 28, 34 (2020) (“In order to constitute

 actionable neglect, the conditions at issue must result in ‘some physical, mental, or

 emotional impairment of the juvenile or a substantial risk of such impairment.’ ”

 (citation omitted)). Further, assuming arguendo that the incident and alleged lack of

 care constituted prior neglect, the trial court did not find that there would be a

 likelihood of future neglect should Cash be returned to respondent’s care, nor do the

 trial court’s sparse findings of fact support such a conclusion. See In re K.N., 373 N.C.

 at 282, 837 S.E.2d at 867 (stating that in light of the juvenile’s prior adjudication of

 neglect and his resulting removal from the home, “we must evaluate whether there

 are sufficient findings of fact in the termination order to support the trial court’s

 ultimate conclusion that there is a likelihood of future neglect by respondent”).

 Therefore, we hold the trial court erred by concluding that grounds existed pursuant

 to N.C.G.S. § 7B-1111(a)(1) to terminate respondent’s parental rights.

¶ 11 We next consider whether the trial court properly concluded that grounds

 existed to terminate respondent’s parental rights for dependency, pursuant to

 N.C.G.S. § 7B-1111(a)(6). A trial court may terminate parental rights based on

 dependency when “the parent is incapable of providing for the proper care and

 supervision of the juvenile, such that the juvenile is a dependent juvenile within the

 meaning of [N.C.G.S. §] 7B-101, and that there is a reasonable probability that the
 IN RE C.L.H.

 2021-NCSC-1

 Opinion of the Court

 incapability will continue for the foreseeable future.” N.C.G.S. § 7B-1111(a)(6). A

 dependent juvenile is defined as “[a] juvenile in need of assistance or placement

 because (i) the juvenile has no parent, guardian, or custodian responsible for the

 juvenile’s care or supervision or (ii) the juvenile’s parent, guardian, or custodian is

 unable to provide for the juvenile’s care or supervision and lacks an appropriate

 alternative child care arrangement.” N.C.G.S. § 7B-101(9). The incapability under

 N.C.G.S. § 7B-1111(a)(6) “may be the result of substance abuse, intellectual

 disability, mental illness, organic brain syndrome, or any other cause or condition

 that renders the parent unable or unavailable to parent the juvenile and the parent

 lacks an appropriate alternative child care arrangement.” N.C.G.S. § 7B-1111(a)(6).

 To adjudicate the ground of dependency, the trial court “must address both (1) the

 parent’s ability to provide care or supervision, and (2) the availability to the parent

 of alternative child care arrangements.” In re K.R.C., 374 N.C. 849, 859, 845 S.E.2d

 56, 63 (2020) (citation omitted).

¶ 12 Here, the sole express finding of fact made by the trial court regarding this

 statutory ground was that “the ground of dependency exists in that there was no

 proper plan for care of the minor child.” Arguably, the trial court’s finding of fact 17(a)

 concerning the February 2018 incident and the lack of an alternative plan of care for

 Cash was also related to this statutory ground. However, the trial court made no

 finding of fact, and there was no evidence presented, that at the time of the
 IN RE C.L.H.

 2021-NCSC-1

 Opinion of the Court

 termination hearing respondent suffered from any condition which rendered him

 incapable of providing proper care or supervision to Cash. The only evidence

 presented that possibly supported a conclusion that respondent was incapable of

 parenting Cash was the incident in February 2018, which occurred over 18 months

 prior to the termination hearing. See In re Z.D., 258 N.C. App. 441, 452, 812 S.E.2d

 668, 676 (2018) (holding that the evidence was insufficient to support termination of

 respondent’s parental rights based on dependency where “[r]espondent’s mental

 health and parenting abilities pertain[ed] more to the historic facts of the case that

 occurred at least a year prior to the hearing, and the order contain[ed] no specific

 findings regarding [r]espondent’s condition, mental health, and alleged incapability

 at the time of the hearing”). Accordingly, we hold that the trial court erred by

 concluding that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(6) to terminate

 respondent’s parental rights.

¶ 13 Finally, we consider the trial court’s conclusion that grounds existed pursuant

 to N.C.G.S. § 7B-1111(a)(4) to terminate respondent’s parental rights for his willful

 failure to pay for the child’s care without justification. A trial court may terminate a

 parent’s parental rights pursuant to this statutory ground when

 [o]ne parent has been awarded custody of the juvenile by
 judicial decree or has custody by agreement of the parents,
 and the other parent whose parental rights are sought to
 be terminated has for a period of one year or more next
 preceding the filing of the petition or motion willfully failed
 without justification to pay for the care, support, and
 IN RE C.L.H.

 2021-NCSC-1

 Opinion of the Court

 education of the juvenile, as required by the decree or
 custody agreement.

 N.C.G.S. § 7B-1111(a)(4). We agree with the Court of Appeals that, when seeking to

 terminate parental rights pursuant to this statutory ground, “petitioner must prove

 the existence of a support order that was enforceable during the year before the

 termination petition was filed.” In re I.R.L., 263 N.C. App. 481, 485, 823 S.E.2d 902,

 905 (2019) (quoting In re Roberson, 97 N.C. App. 277, 281, 387 S.E.2d 668, 670

 (1990)). When the trial court fails to make findings of fact “indicating that a child

 support order existed or that [the parent] failed to pay support ‘as required by’ the

 child support order,” its findings are insufficient to support the conclusion that

 grounds for termination exist pursuant to N.C.G.S. § 7B-1111(a)(4). Id. at 486, 823

 S.E.2d at 906.

¶ 14 In In re I.R.L., the Court of Appeals concluded that the trial court’s findings

 were insufficient to support a conclusion that the father’s parental rights were subject

 to termination pursuant to N.C.G.S. § 7B-1111(a)(4). Id. The Court of Appeals noted

 that

 while both parties testified that a child support order was
 entered in December 2014 ordering [the] father to pay
 $50.00 per month in child support, the trial court’s
 termination order [was] devoid of any findings indicating
 that a child support order existed or that [the f]ather failed
 to pay support “as required by” the child support order.

 Id. Here, the trial court made no findings of fact that a child support order existed in
 IN RE C.L.H.

 2021-NCSC-1

 Opinion of the Court

 the year prior to the filing of the petition to terminate respondent’s parental rights.

 Consequently, we conclude that the trial court’s findings of fact are insufficient to

 support the termination of respondent’s parental rights based on N.C.G.S. § 7B-

 1111(a)(4).

¶ 15 The dissent, urging affirmance of the trial court’s decision, attempts to

 distinguish In re I.R.L. by pointing out that the trial court’s order in that case was

 “devoid of any findings indicating that a child support order existed or that [the

 respondent] failed to pay support ‘as required by’ the child support order.” In re I.R.L.,

 263 N.C. App. at 486, 823 S.E.2d at 906. However, as discussed above, the trial court’s

 order in the instant case is similarly deficient. The dissent also points to the fact that

 “the only evidence [in In re I.R.L.] supporting the existence of a child support order

 was the testimony of both parties.” However, the source of the evidence, as opposed

 to its existence in the record, does not affect our decision on this issue. When

 reviewing an order terminating parental rights, our task as an appellate court is “to

 determine whether the findings are supported by clear, cogent and convincing

 evidence and the findings support the conclusions of law.” In re Z.A.M., 374 N.C. at

 94, 839 S.E.2d at 797 (quoting In re C.B.C., 373 N.C. at 19, 832 S.E.2d at 695). Just

 as in this case, the trial court in In re I.R.L. failed to find as a fact that a child support

 order existed, and that the respondent had violated it, despite the existence of

 evidence in the record that would have supported such a finding. In re I.R.L., 263
 IN RE C.L.H.

 2021-NCSC-1

 Opinion of the Court

 N.C. App. at 486, 823 S.E.2d at 906. The source of that evidence, so long as it is clear,

 cogent, and convincing, is not relevant to our analysis. There is no material

 distinction between this case and In re I.R.L.

¶ 16 We note that here there appears to be evidence in the record which might

 support a conclusion that grounds existed to terminate respondent’s parental rights

 pursuant to this statutory ground. First, petitioner alleged in the termination

 petition, and respondent admitted in his answer, that the parties had entered into a

 child support consent order.3 Neither the allegation nor the admission, however,

 establish that the support order was in effect during the year prior to the filing of the

 termination petition. See N.C.G.S. § 7B-1111(a)(4) (permitting termination of

 parental rights if a parent has failed to pay support as required by a decree or custody

 agreement “for a period of one year or more next preceding the filing of the petition

 or motion”). Second, petitioner testified that there was a child support order in place

 at the time of the termination hearing.

¶ 17 Also on this ground, the trial court found as fact, and respondent does not

 dispute, that respondent “paid no support, whether child support or other monetary

 support for the benefit of the minor child since September 2015.” Respondent does,

 3 The admitted allegation reads: “Within the same Cabarrus County file, the
 Petitioner and Respondent entered into a child support consent order wherein the
 Respondent agreed to pay the Plaintiff the sum of $433 per month and fifty percent (50%) of
 any uninsured medical bills after the first $250 is paid by the Petitioner.”
 IN RE C.L.H.

 2021-NCSC-1

 Opinion of the Court

however, argue that the trial court failed to make any findings of fact regarding

whether his failure to pay support was willful, and, thus, the trial court’s conclusion

on this issue was not supported by its factual findings. It is not necessary to resolve

this argument because we have determined that the trial court failed to make factual

findings that respondent failed to pay for the care, support, and education of the

juvenile within the year prior to the filing of the termination petition “as required by

the decree or custody agreement.” See N.C.G.S. § 7B-1111(a)(4). We note, however,

that the existence of the child support order in effect at the relevant time, if it had

been included in the factual findings, would support a conclusion that respondent had

the ability to pay some portion of the cost of care for the juvenile. In re J.D.S., 170

N.C. App. 244, 257, 612 S.E.2d 350, 358 (quoting In re Roberson, 97 N.C. App. 277,

281, 387 S.E.2d 668, 670 (1990)), cert. denied, 360 N.C. 64, 623 S.E.2d 584 (2005) (“In

a termination action pursuant to this ground, petitioner must prove the existence of

a support order that was enforceable during the year before the termination petition

was filed. . . . Because a proper decree for child support will be based on the supporting

parent’s ability to pay as well as the child’s needs, . . . there is no requirement that

petitioner independently prove or that the termination order find as fact respondent’s

ability to pay support during the relevant statutory time period.” (alterations in

original)). Where, as in this matter, the “trial court’s adjudicatory findings were

insufficient to support its conclusion that termination of the parent’s rights was
 IN RE C.L.H.

 2021-NCSC-1

 Opinion of the Court

 warranted, but the record contained additional evidence that could have potentially

 supported a conclusion that termination was appropriate,” we “vacate[ ] the trial

 court’s termination order and remand[ ] the case for further proceedings, including

 the entry of a new order containing findings of fact and conclusions of law addressing

 the issue of whether [the] ground for termination existed.” In re K.N., 373 N.C. at

 284, 837 S.E.2d at 869.4

¶ 18 The dissent, urging the opposite result, argues that the trial court’s findings of

 fact 11 and 17(c) were supported by the record and support the trial court’s conclusion

 to terminate respondent-father’s parental rights pursuant to N.C.G.S. § 7B-

 1111(a)(4). However, neither those nor any of the other findings of the trial court

 establish the existence of a child support order at the relevant time. In arguing that

 the record evidence supports the result below, it appears that the dissent is conflating

 the record with the factual findings of the trial court. However, it is our role to review

 4 The dissent incorrectly suggests that on the question of whether a remand is
 necessary for factual findings, this case is controlled by In re A.U.D., 373 N.C. 3, 10–11, 832
 S.E.2d 698, 702–03 (2019). In that case, we declined to remand to the trial court for written
 findings on specific factors that the trial court must consider during the best interests phase
 of the proceeding. In re A.U.D., 373 N.C. 3, 11, 832 S.E.2d 698, 703 (2019). Critically, N.C.G.S.
 § 7B-1110(a) does not require written findings as to each factor. Id. at 10, 832 S.E.2d at 703.
 Because the trial transcript demonstrated that the trial court had carefully considered each
 factor, satisfying the statutory requirement, we concluded that remand for written findings
 on each factor “would be an elevation of form over substance.” Id. at 11, 832 S.E.2d at 703. In
 any case, even were we to adopt the dissent’s view that written findings are never required
 for uncontested facts, the uncontested evidence in this case does not establish that a child
 support order was in place during the relevant time period—namely, the year preceding the
 filing of the termination petition. See N.C.G.S. § 7B-1111(a)(4).
 IN RE C.L.H.

 2021-NCSC-1

 Opinion of the Court

 the trial court’s factual findings to determine whether they support the trial court’s

 conclusions of law. See, e.g., In re E.H.P., 372 N.C. at 392, 831 S.E.2d at 52. As the

 Court of Appeals has stated, “[i]t is the role of the trial court and not [the appellate

 court] to make findings of fact regarding the evidence.” In re F.G.J., 200 N.C. App.

 681, 693, 684 S.E.2d 745, 754 (2009); see also In re K.N., 373 N.C. at 283, 837 S.E.2d

 at 868 (rejecting argument of petitioner that evidence in the record supported

 affirmance of trial court’s ultimate conclusions and instead looking to “the trial

 court’s actual findings”).

¶ 19 This principle has long been followed by our courts. As Justice Exum explained

 forty years ago:

 The purpose of the requirement that the court make
 findings of those specific facts which support its ultimate
 disposition of the case is to allow a reviewing court to
 determine from the record whether the judgment–and the
 legal conclusions which underlie it–represent a correct
 application of the law. The requirement for appropriately
 detailed findings is thus not a mere formality or a rule of
 empty ritual; it is designed instead “to dispose of the issues
 raised by the pleadings and to allow the appellate courts to
 perform their proper function in the judicial system.”

 Coble v. Coble, 300 N.C. 708, 712, 268 S.E. 2d 185, 189 (1980) (quoting Montgomery

 v. Montgomery, 32 N.C. App. 154, 158, 231 S.E.2d 26, 29 (1977) and citing Crosby v.

 Crosby, 272 N.C. 235, 158 S.E. 2d 77 (1967)). In deciding whether a trial court’s award

 of alimony followed the requirements of applicable statutes, this Court explained:

 The requirement of special fact-finding did not begin with
 IN RE C.L.H.

 2021-NCSC-1

 Opinion of the Court

 implementation of our present Rules of Civil Procedure. In
 Martin v. Martin, 263 N.C. 86, 138 S.E. 2d 801 (1964) (per
 curiam), this Court reviewed a trial court order which
 directed alimony pendente lite and child support payments.
 The trial court made only limited findings of [fact] about
 the defendant’s financial circumstances. The hearing had
 been on affidavits and defendant submitted his own
 uncontradicted affidavit indicating his dire financial
 situation. However, no findings of fact concerning the
 matters in the affidavit were made. This Court stated, in
 remanding to the trial court:

 If the facts set out in defendant’s affidavit are true, the
 payments required of defendant are clearly excessive,
 unrealistic and beyond the limits of judicial discretion. The
 court made no specific findings with respect to the matters
 set out in the affidavit, and it does not appear whether they
 were considered. 263 N.C. at 87–88, 138 S.E. 2d at 802
 (emphasis added).

Quick v. Quick, 305 N.C. 446, 452–53, 290 S.E.2d 653, 658 (1982). In the termination

of parental rights context, this has long been the rule as well. See, e.g., In re T.P.,

197 N.C. App. 723, 730, 678 S.E.2d 781, 787 (2009) (“We have little doubt after

studying the record that there existed evidence from which the trial court could have

made findings and conclusions to support its orders for termination of parental rights.

Unfortunately, the skeletal orders in the record are inadequate to allow for

meaningful appellate review.”); In re B.G., 197 N.C. App. 570, 574, 677 S.E.2d 549,

552 (2009) (“Although there may be evidence in the record to support a finding that

Respondent acted inconsistently with his custodial rights, it is not the duty of this

Court to issue findings of fact.”). The dissent’s position would have us make factual
 IN RE C.L.H.

 2021-NCSC-1

 Opinion of the Court

 findings for the trial court on a fundamental and material fact, which is not how we

 have applied the standard of review in these cases. As we did recently in In re K.N.,

 and In re N.D.A., we are compelled to remand for further factual findings on this

 ground. See In re K.N., 373 N.C. at 284, 837 S.E.2d at 868; In re N.D.A., 373 N.C. 71,

 84, 833 S.E.2d, 768, 777 (2019).

¶ 20 In summary, the portions of the trial court’s order concluding that respondent’s

 parental rights were subject to termination under N.C.G.S. § 7B-1111(a)(1) and (6)

 are reversed. The portion of the trial court’s order adjudicating grounds for

 termination under N.C.G.S. § 7B-1111(a)(4) is vacated and remanded for further

 proceedings not inconsistent with this opinion, including the entry of a new order

 containing findings of fact and conclusions of law addressing whether there was a

 child support order in place that was enforceable during the year before the

 termination petition was filed and the issue of whether respondent willfully failed to

 pay support for Cash without justification. The trial court may, in the exercise of its

 discretion, receive additional evidence on remand if it elects to do so. See In re K.N.,

 373 N.C. at 285, 837 S.E.2d at 869.

 REVERSED IN PART; VACATED AND REMANDED IN PART.
 Justice BARRINGER dissenting.

¶ 21 Based on a review of the record, respondent-father did not preserve for appeal

 the issue of whether petitioner-mother proved the existence of a child support order

 to terminate respondent-father’s parental rights under N.C.G.S. § 7B-1111(a)(4).

 Moreover, even if respondent-father had preserved the issue for appeal, the trial

 court’s findings are sufficient to support the conclusion that grounds for termination

 existed pursuant to N.C.G.S. § 7B-1111(a)(4).

¶ 22 N.C.G.S. § 7B-1111(a)(4) states:

 (a) The court may terminate the parental rights upon a
 finding of one or more of the following:

 ....

 (4) One parent has been awarded custody of the juvenile
 by judicial decree or has custody by agreement of the
 parents, and the other parent whose parental rights are
 sought to be terminated has for a period of one year or more
 next preceding the filing of the petition or motion willfully
 failed without justification to pay for the care, support, and
 education of the juvenile, as required by the decree or
 custody agreement.

¶ 23 Here, respondent-father admitted that a child support order existed.

 Specifically, respondent-father admitted to the following allegation in his answer to

 petitioner-mother’s petition for termination:

 Within [Cabarrus County File Number: 11-CVD-961], the
 Petitioner and Respondent entered into a child support
 consent order wherein the Respondent agreed to pay the
 Plaintiff the sum of $433 per month and fifty percent (50%)
 of any uninsured medical bills after the first $250 is paid
 IN RE C.L.H.

 2021-NCSC-1

 Barringer, J., dissenting

 by the Petitioner.

¶ 24 Respondent-father never moved to amend his answer or otherwise present to

 the trial court any reason to disregard this admitted allegation. See N.C. R. App. P.

 10(a)(1). It is well-established law in this state that an admission in an answer binds

 the answering party and renders the fact uncontested. See Harris v. Pembaur, 84

 N.C. App. 666, 670 (1987) (“Facts alleged in the complaint and admitted in the answer

 are conclusively established by the admission.” (citing Champion v. Waller, 268 N.C.

 426 (1966))).

¶ 25 In re I.R.L., 263 N.C. App. 481 (2019)1 is incorrectly relied upon by respondent-

 father and the majority. On the contrary, the controlling precedent established by

 this Court is found in In re A.U.D., 373 N.C. 3, 10–11 (2019), where this Court held

 that “a remand by this Court to the trial court for written findings on these

 uncontested issues—a disposition for which our dissenting colleague appears to be

 advocating—would be an elevation of form over substance and would serve only to

 delay the final resolution of this matter for the children.” Affirming the trial court’s

 termination of parental rights in this case does not involve improperly finding facts

 that a child support order exists, as the majority contends. Here, the fact of the

 1 While the majority relies on this decision from the Court of Appeals, it is worth

 noting that decisions from the Court of Appeals are only persuasive, not binding authority
 on this Court in cases not previously adopted.
 IN RE C.L.H.

 2021-NCSC-1

 Barringer, J., dissenting

 existence of a child support order is uncontested by respondent-father’s admission in

 his answer to petitioner-mother’s allegation in her petition for termination.2 To

 remand this case and direct the trial court to make findings of fact on a fact already

 uncontested by both parties is “an elevation of form over substance.” Id.

¶ 26 Moreover, In re I.R.L. is distinguishable from the instant case. In that case,

 the “trial court’s termination order [was] devoid of any findings indicating that a child

 support order existed or that [the f]ather failed to pay support ‘as required by’ the

 child support order,” and the only evidence supporting the existence of a child support

 order was the testimony of both parties. Id. at 486.

¶ 27 In this case, the trial court determined that “[t]he Respondent-father paid no

 support, whether child support or other monetary support for the benefit of the minor

 child since September 2015, over four years next preceding the filing of this

 [termination].” Respondent-father did not challenge finding of fact 11 in the trial

 court’s termination order. Unchallenged findings of fact are “deemed supported by

 2 Moreover, a review of the record indicates that the parties apparently considered the

 issue of whether there was a child support order to be settled. Petitioner-mother, in her
 testimony during direct examination responded that there was a child support order in place
 for the minor child. On cross examination of the petitioner-mother, the respondent-father’s
 attorney did not question her regarding her testimony regarding the child support order. On
 direct examination, the respondent-father testified that he paid money in accordance with
 “the legal agreement we had.”
 IN RE C.L.H.

 2021-NCSC-1

 Barringer, J., dissenting

 competent evidence and are binding on appeal.” In re T.N.H., 372 N.C. 403, 407

 (2019). Therefore, finding of fact 11 is binding on this Court.

¶ 28 Finding of fact 11 is also supported by sufficient evidence. Respondent-father

 admitted that “Petitioner[-mother] and Respondent[-father] entered into a child

 support consent order wherein the Respondent[-father] agreed to pay the [Petitioner-

 mother] the sum of $433 per month.” The uncontroverted evidence showed that there

 was a child-support order in place for Cash, the biological child of petitioner-mother

 and respondent-father, and that the last payment respondent-father made was in

 September 2015.

¶ 29 The record additionally supports the trial court’s finding of fact 17(c) that

 respondent-father willfully failed to pay child support. Respondent-father testified

 that he intentionally withheld financial support from Cash. Respondent-father

 testified that he was employed. When asked about his financial assistance after the

 25 February 2018 incident and the loss of his visitation rights, respondent-father

 responded as follows: “I’m not going to give the money when I’m not even allowed to

 spend time with my son.” Also, respondent-father did not give any justification for his

 failure to pay child support after the 25 February 2018 incident and admitted he was

 currently employed as a subcontractor and had worked as a contractor for most of his

 life. On this record, there is sufficient evidence to find that respondent-father had

 willfully and without justification failed to pay child support for four years.
 IN RE C.L.H.

 2021-NCSC-1

 Barringer, J., dissenting

¶ 30 Respondent-father argues that finding of fact 17(c) should be treated as a

 conclusion of law and raises that the trial court used the same language in its third

 conclusion of law. The majority seems to implicitly adopt this argument. However, a

 finding that an act is willful is determined by the trier of fact whether it be a jury or

 the trial court. In re K.N.K., 374 N.C. 50, 53 (2020) (“The willfulness of a parent’s

 actions is a question of fact for the trial court.”); see also Brandon v. Brandon, 132

 N.C. App. 646, 651 (1999) (“Where the trial court sits as the finder of fact, ‘and where

 different reasonable inferences can be drawn from the evidence, the determination of

 which reasonable inference shall be drawn is for the trial [court].’ ” (alteration in

 original)). Plainly, the determination of whether a parent is acting willfully is a

 finding of fact and not a conclusion of law. In re J.S., 374 N.C. 811, 818 (2020). Finding

 of fact 17(c) is therefore properly classified as a finding of fact in the trial court’s

 termination order.

¶ 31 In conclusion, respondent-father’s admission in his answer to petitioner-

 mother’s allegation that he had entered into a consent child support order makes its

 existence an uncontested fact. Additionally, the trial court’s findings of fact 11 and

 17(c) were supported by sufficient evidence in the record and support the trial court’s

 conclusion to terminate respondent-father’s parental rights pursuant to N.C.G.S.

 § 7B-1111(a)(4) for willfully failing to pay child support without justification.

¶ 32 For these reasons, the decision of the trial court should be upheld on the ground
 IN RE C.L.H.

 2021-NCSC-1

 Barringer, J., dissenting

for termination pursuant to N.C.G.S. § 7B-1111(a)(4).3 Accordingly, I respectfully

dissent.

 Chief Justice NEWBY and Justice BERGER join in this dissenting opinion.

 3 Since I would affirm the trial court’s termination pursuant to N.C.G.S § 7B-
1111(a)(4) and only one termination ground is required under N.C.G.S. § 7B-1111(a), it is
unnecessary to reach the remaining grounds found by the trial court.